United States District Court
Southern District of Texas
**ENTERED**
July 06, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| **CHARLES JASON BROWN** § § | |
| Petitioner, § | |
| v. § | CIVIL ACTION NO. 7:17-CV-00236 |
| § § | |
| **LORIE DAVIS, Director,** § | |
| Texas Department of Criminal Justice, | |
| Correctional Institutions Division, | |
| | |
| Respondent. | |

## REPORT & RECOMMENDATION

Petitioner, a state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1). The State filed a motion for summary judgment on November 29, 2017. (Dkt. No. 13). Petitioner has not filed any response to the State's motion for summary judgment.

Petitioner's sole claim is that he should receive credit for time served as soon as he waived his right to a preliminary hearing and admitted to violating his parole conditions. This case was referred to the undersigned United States Magistrate Judge for report and recommendation. After a careful review of the record and relevant law, the undersigned has determined that Petitioner's claim should be dismissed. The undersigned recommends that Movant's § 2254 motion (Dkt. No. 1) be **DENIED** and the State's motion for summary judgment (Dkt. No. 13) be **GRANTED**. It is further recommended that Movant's § 2254 motion be **DISMISSED** with prejudice and the case be closed.

## PROCEDURAL HISTORY

By indictment filed December 2, 2011, the state of Texas charged Petitioner with intentionally and knowingly possessing four or more grams of cocaine, related to events on or

about August 6, 2011, in the 158th Judicial District Court, in and for Denton County, Texas. (Dkt. No. 14-2 at 30).

Petitioner pled guilty and was sentenced to a four-year term of incarceration on June 27, 2014. (Dkt. No. 14-2 at 40). The judgment of conviction noted two date ranges for which Petitioner would receive time credited: from August 6, 2011 to March 2, 2012 (a period of 209 days) and from April 7, 2014 to June 27, 2014 (period of 81 days). (*Id.*).

Petitioner then was placed in the custody of the Texas Department of Criminal Justice (TDCJ). Before he served his full sentence, Petitioner was released on parole on May 7, 2015. (Dkt. Nos. 13-1 at 7; 14-2 at 45).

Petitioner was arrested in the state of Louisiana on September 11, 2015, by Union Parish Sheriff's Officers for possession of an alcoholic beverage in a vehicle, possession of drug paraphernalia, possession of methamphetamine, and no driver's license. (Dkt. No. 13-1 at 2). On September 15, 2015, Louisiana authorities discovered that Petitioner was on parole for his Texas conviction and contacted Texas authorities. (*Id.* at 2). On October 8, 2015, Texas responded by asking Louisiana authorities to notify Texas authorities upon disposition of the pending charges, indicating that it would "await the disposition of the pending charges, before a decision is made. Please conduct a probable cause hearing and forward your findings to Texas, ASAP. Please advise what sanctions have been imposed." (*Id.* at 3).

On October 21, 2015, Petitioner waived his right to a preliminary hearing and pled guilty to all violations. (Dkt. No. 13-1 at 5-6). On January 20, 2016, the Louisiana court sentenced petitioner to two years' "hard labor," to be served concurrently with whatever sentence or parole time to be imposed in Texas. (*Id.* at 7).

On March 19, 2016, Texas issued a parole revocation warrant; the warrant was executed the same day. (Dkt. No. 14-2 at 45). Thereafter, Petitioner was transferred back to TDCJ custody. On July 28, 2016, the State of Texas Board of Pardons and Paroles conducted a parole revocation hearing. (Dkt. No. 13-2 at 7). The parole board formally revoked Petitioner's parole on August 2, 2016, sustaining the finding that Petitioner did violate a condition of his parole by violating the laws of Texas or any other state. (*Id.*).

Petitioner filed a state habeas petition on March 1, 2017. (Dkt. No. 14-2 at 4-21). Petitioner made the same argument to the state court, but did not cite to any state or federal law. His state habeas petition was denied without written opinion on June 21, 2017. (Dkt. No. 14-1).

Petitioner filed the instant § 2254 petition on May 26, 2017.[1] On December 22, 2017, Defendant was released on parole. Finally, Petitioner has not updated his address with the Clerk of the Court, so his current whereabouts are unknown.

## TIMELINESS

Pursuant to 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a state prisoner has one year to petition a federal district court for a writ of habeas corpus. The statute states in pertinent part:

> (d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[1] [P]ro se prisoners' filings are governed by the mailbox rule. Thus, they are deemed 'filed as soon as the pleadings have been deposited into the prison mail system.'" *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011). This date is taken from Movant's statement, made under the penalty of perjury, that his motion was placed in the prison mailbox. (Dkt. No. 1 at 10).

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2254(d).

Subsection (d)(1)(D) applies in the parole-revocation context. *See Heiser v. Johnson*, No. 00–10408, 2001 WL 803542 (5th Cir. June 8, 2001) (unpublished) ("Heiser knew of the facts surrounding the revocation of his mandatory supervision and the forfeiture of his accrued good conduct credits at least by the date his supervision was revoked on February 11, 1998. Accordingly, we conclude that under § 2244(d)(1)(D) the statute of limitations on Heiser's claim began running on that date."); *Davila v. Johnson*, No. 3-01-CV-1065-R, 2001 WL 1295491, at *2 (N.D. Tex. Oct. 5, 2001) (using date of petitioner's parole revocation as the start of a new AEDPA statute of limitations).

Using the date most favorable to Petitioner, the factual predicate for his claim was known at the latest on August 2, 2016, when his parole was formally revoked. Petitioner would then have one year from this date to file his federal habeas petition.

Petitioner filed a state habeas petition on March 1, 2017, tolling the statute of limitations. At this point, 211 days had run on the AEDPA clock. The time during which a properly filed application for state post-conviction or other collateral review concerning the pertinent judgment or claim is pending shall not be counted toward the one-year statute of limitations. § 2254(d)(2).

Petitioner's state habeas petition was denied on June 21, 2017. "[U]ntil the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Carey v. Saffold*, 536 U.S. 214, 220 (2002). Before Petitioner's state habeas application was denied, however, he filed his federal habeas application on May 26,

2017. Therefore, the AEDPA clock never restarted. Consequently, Petitioner's § 2254 petition is timely.

## AEDPA STANDARD

Pursuant to 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody. Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to a Supreme Court decision on a question of law, or if it arrives at a different result than the Supreme Court did on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. The standard is "objectively unreasonable." *Id.* A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). This court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). In order for remedies to be exhausted, a petitioner must have given the state courts an opportunity to address his federal claim. *Id.* A petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995).

## PROCEDURAL DEFAULT

Petitioner's state habeas petition was denied without written opinion. When this occurs, the federal habeas court may assume that the decision is on the merits. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). There is no requirement that a state court write an opinion explaining the court's reasoning. *Id.* at 98. "For such a situation, our court: (1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an

objectively unreasonable application of' that law." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

However, Petitioner did not present a "federal claim" to the state court. Just as in his § 2254 petition, Petitioner cited no federal law—or any law—as basis for his claim. "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 5-6 (1982) (citations omitted). As such, his claim is procedurally defaulted.

Even if Petitioner had cited some federal law as the basis for his claim and his claim were not procedurally defaulted, Petitioner is not entitled to federal habeas relief, as explained below.

## MERITS

Petitioner's claim is that he believes he is entitled to credit for time served as soon as he waived the preliminary hearing and "pled guilty" to the violations of his parole in Louisiana, or in other words, that the time period from October 21, 2015 to March 18, 2016 should be credited to his Texas sentence. Petitioner, however, conflates his own admission of guilt with revocation.

"The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules. In practice, not every violation of parole conditions automatically leads to revocation." *Morrissey v. Brewer*, 408 U.S. 471, 477-80 (1972). "The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" *Id.*

The Supreme Court held that the Due Process Clause necessitates a preliminary hearing to determine the first "factual question" as soon as possible and as near the place of alleged parole violation as possible, while witnesses and other evidence are still easily available:

> [W]e see two important stages in the typical process of parole revocation . . . the first stage occurs when the parolee is arrested and detained, usually at the direction of his parole officer. The second occurs when parole is formally revoked. There is typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked. Additionally, it may be that the parolee is arrested at a place distant from the state institution, to which he may be returned before the final decision is made concerning revocation. Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions. . . . Such a determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision.

*Id.* (internal citations omitted).

This is exactly what transpired in Petitioner's case. Petitioner was arrested in Louisiana on the basis of violating Louisiana law—not because he violated his parole.[2] Petitioner's admission satisfied the need for Louisiana authorities to conduct the above "preliminary hearing" to determine probable cause for the parole violation, which needed to be conducted "reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest

---

[2] The affidavit provided by a TDCJ supervisor states that Petitioner was released "to parole," but a chart of dates provided in the same affidavit states that he was "released to supervision" and "supervision [was] revoked." (Dkt. No. 14-2 at 45). This Court is not distinguishing whether Petitioner was technically on parole or mandatory supervision because it is not at issue. *See Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007) ("[M]andatory supervision in Texas is 'the release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division.' "); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) ("Prisoners may become eligible for release under Texas law on parole or under a mandatory supervised release program.").

while information is fresh and sources are available." The preliminary hearing and revocation hearing are separate stages.

Petitioner's waiver of a preliminary hearing and any admission does not act as a revocation. *See Malena v. Richard*, 117 F. App'x 355, 356 (5th Cir. 2004) ("[A] parolee must be afforded a preliminary probable cause hearing when he is arrested for a parole violation and a more through revocation hearing within a reasonable time after he is taken into custody."); *Meza v. Livingston*, 607 F.3d 392, 404 (5th Cir. 2010) (parolees have a right to a hearing with minimum Due Process protections before their parole is revoked, including the right to confront and cross-examine adverse witnesses). The second stage had yet to occur. Only the Texas parole board could revoke Petitioner's Texas sentence. Until this determination is made, there may not even be a reinstated Texas sentence for the time to count against. Petitioner has the ability to admit his guilt and waive his right to present his defense at a revocation hearing, but he is not instilled with the power to formally revoke his parole.

As of October 21, 2015, Petitioner remained detained solely on the basis of the Louisiana charge. Petitioner's waiver of his preliminary hearing provided the basis for the state of Texas to issue the pre-revocation warrant to bring him under Texas custody. That pre-revocation warrant was issued and executed on March 19, 2016.

Texas credits back time detained pursuant to a pre-revocation warrant as a matter of state law. This is done largely to avoid "chill[ing] the parolee's decision to exercise his constitutional right to a pre-revocation hearing." *Ex parte Canada*, 754 S.W.2d 660, 667 (Tex. Crim. App. 1988). Texas acknowledged that, before this state-imposed rule, a parolee would be incentivized to immediately admit the violation so that his parole would be revoked and he could begin to accrue time toward the completion of his sentence. *Id.* This state-imposed right has not been

held to have a basis in federal constitutional law. Comparably, there is no absolute constitutional right to credit for the time served between an arrest and the sentence. *Jackson v. Alabama*, 530 F.2d 1231, 1237 (5th Cir. 1976).

Under Texas law, in order for a petitioner to receive credit on a Texas sentence for time served in another jurisdiction, he must establish that some detainer or hold was lodged by the state of Texas with the other jurisdiction. *Ex parte Bynum*, 772 S.W.2d 113, 114–15 (Tex. Crim. App. 1989). "The rationale for allowing a time credit [for a Texas sentence] is that the hold results in a 'change in the basis for (a prisoner's) confinement.'" *Id.* The prisoner now comes under the "constructive detention" of the jurisdiction lodging the detainer. *Id.*

Petitioner is entitled to credit for time served from March 19, 2016, because his confinement became pursuant to the execution of a warrant issued under Texas law. It has nothing to do with waiving his right to a preliminary hearing or admitting to his related violations. Petitioner has not shown that he was confined prior to March 19, 2016 pursuant to a pre-revocation warrant or other detainer issued under Texas law. *See Wiggins v. Thaler*, 428 F. App'x 468, 471 (5th Cir. 2011) (petitioner not entitled to credit against his sentence for time spent confined in Nebraska not pursuant to a Texas pre-revocation warrant); *Deveny v. U.S. Bd. of Parole*, 565 F.2d 875, 878 (5th Cir. 1978) ("[T]he issuance of the warrant was not a determination that the parole would be revoked; the time for that decision had not yet arrived. The loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant.").

Further, to the extent Petitioner seeks relief based on state law claim, federal habeas relief is unavailable. *E.g., Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief

does not lie for errors of state law . . . .") (citations omitted). For the above stated reasons, this claim must be dismissed.

## CONCLUSION

### *Recommended Disposition*

After a careful review of the record and relevant law, the undersigned recommends that Petitioner's § 2254 motion be **DENIED** (Dkt. No. 1) and Respondent's motion for summary judgment be **GRANTED** (Dkt. No. 13). Finally, it is recommended that Petitioner's § 2254 motion be **DISMISSED** with prejudice and the case be closed.

### *Certificate of Appealability*

It is recommended that the District Court deny a Certificate of Appealability.

Pursuant to 28 U.S.C. § 2253(c)(1)(A), the movant may not appeal the final order of a habeas corpus proceeding "unless the circuit justice or judge issues a certificate of appealability." The Rules Governing Section 2254 Proceedings instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, The Rules Governing Section 2254 Proceedings. Because it is recommended that Petitioner's § 2254 motion be dismissed, it must be addressed whether he is entitled to a certificate of appealability (COA).

A movant is entitled to a COA when it can be shown that a reasonable jurist would find it debatable "whether the petition states a valid claim of the denial of a constitutional right" and "whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c). Because the undersigned finds that Petitioner fails to meet this threshold, it is recommended that the District Court deny a COA.

Accordingly, Movant is not entitled to a COA.

### *Notice to the Parties*

Within fourteen days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Federal Rules of Civil Procedure, Rule 72(b). Failure to file written objections within fourteen days after service shall bar an aggrieved party from de novo review by the District Court on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of clear error or manifest injustice.

The clerk of this court shall forward a copy of this document to the parties by any receipted means.

SIGNED this 6th day of July, 2018, at McAllen, Texas.

J. SCOTT HACKER
United States Magistrate Judge